May it please the Court, my name is Mary Jean Chan and I represent the United States in this appeal. I would like to reserve two minutes for rebuttal. Do you have any argument in this case that you did not make in the prior case? I do, and that's specific to Mr. Pleasant and I just want to bring to the Court's attention the fact that Mr. Pleasant was a career offender and that there is no dispute about that. In fact, Pleasant acknowledged in the briefing in the District Court for the motion to reduce that under section 1B.1.10 of the sentencing guidelines, he would be precluded from reducing, the Court would be precluded from reducing his sentence and that's at supplemental excerpts of record number three. The plea agreement in his case is also unambiguous that the sentencing guidelines range will be calculated using 4B.1.1. That's at excerpts of record 82. And the sentencing court clearly found that his sentencing range was under the career offender guideline. The sentence, the probation office's recommendation against the reduction of sentence makes that clear and that's in the report at page 2, which was submitted under seal. So this Court should reverse the section to reduce the defendant's sentence. You're not arguing waiver here. I'm trying to figure out why. I think the two cases are distinct factually. In this case, the District Court made a finding that there was no breach of the plea agreement. The government disagrees with that. What happened in this case was that the motion, Mr. Pleasant initially filed a pro se motion. Then when he was appointed counsel, counsel filed motions, but called them notices of eligibility. And the District Court, despite the government's opposition and characterization that these clearly were motions, said that she was going to call them notices as opposed to motions. Ignore the pro se motion and therefore there was no breach. The District Court stated this at excerpt of record 5. So factually it's distinct. There are other distinction factors too that the government took into account in its case-by-case analysis. So your position is that if opposing counsel, instead of calling it a motion, calls it a notice, you concede then that that is enough, that's all they have to do in the future, not to . . . not be in compliance with their plea agreement, which says that they understand that they're never going to seek a reduction in their sentence in the future. Absolutely not, Your Honor. But the District Court made a factual finding, which we believe is clearly erroneous, but because it is subject to a clear error review standard, that was one distinctive factor which caused the government not to pursue that argument in the Pleasant appeal. But absolutely our position is that that was a breach and that the District Court did clearly error. We simply didn't raise it upon appeal. Well, so you're not arguing in this case that the defendant, you know, there's a waiver in effect, right, that bars this . . . Absolutely. Bars the merits, bars us from reaching the merits of the case. You're not arguing that here. No. We would like, the government would like a ruling on both the waiver issue, that when such a waiver is part of a negotiated plea agreement. And again, Pleasant received a very favorable sentence as part of the plea agreement. But there's no waiver issue in this case. That's right. But we would like between the two cases, Maloney and Pleasant, to receive a ruling on both the waiver issue as well as the merits issue, which is that there's no jurisdiction when you have a career offender whose applicable guideline range, as defined by the sentencing guidelines, is not lowered. If there are no more questions, I would like to have a chance to address the Court again on rebuttal, but I would sit down now. Thank you. Good morning, Your Honors. May it please the Court, my name is Rita Bosworth. I work for the Federal Public Defender's Office, and I represent the appellee in this case, Robert Pleasant, who is present in court today. Your Honors, in this case, the District Court properly held that Mr. Pleasant was eligible for the reduction of sentence. Mr. Pleasant entered into a binding Rule 11C1C agreement, where he and the government agreed that he would be sentenced to the low end of the crack cocaine guideline. They didn't agree to a specific number. They specifically tied the sentence to the low end of the crack cocaine guideline range. And the District Court accepted that agreement. Under United States v. Freeman . . . When you say accepted that agreement, though, did the agreement also identify him as a career offender? It did. So that's an agreed-upon fact between the parties in the plea agreement, right? It's an agreed-upon fact in the parties in the plea agreement. However, the reason that C agreements are different is that, and Freeman goes through this, is that in the context of a C agreement, once the judge accepts the agreement, all that matters is the sentence that the parties agreed upon. The guidelines don't matter. The 3553A factors don't matter. No external negotiations matter. All that matters is the sentence. And so in this case, while it's true that in the plea agreement it was stated that he was a career offender, what matters under Justice Sotomayor's concurrence in Freeman is what sentence the parties agreed upon. And there's a reason for this. C agreements are different than any other type of agreement or any other type of sentence. C agreements are the only context in which the parties have the certainty of knowing what the sentence is going to be. And the parties are the ones . . . Where do you get the condition, though, that that's the only thing that matters? You keep emphasizing that. Who said that's the only thing? Did Sotomayor say that? Justice Sotomayor says that if the court will look at footnote 8 of Freeman, she states that even if the district judge has a different guideline calculation, what matters is the sentence agreed upon by the parties in the plea agreement. And so she explicitly explains that the analysis for a C agreement is different than the analysis for any other type of agreement. In the normal course, and the plurality and Justice Sotomayor both explain this, in the normal course, not a C agreement, what happens is the guidelines are calculated, the judge considers the guidelines, the judge considers the 3553A factors, the judge considers what the parties have to say, what probation has to say, and after all of that consideration, the judge imposes a sentence. Well, but, you know, but, see, this would never arise in a non-plea agreement situation because it's only with a plea agreement that you can step away from the career offender guidelines, right? Well, not necessarily. I mean, if you plead open or with any different kind of plea, you can always ask for a sentence below the career offender guidelines. In this, so no, a C agreement is not the only context where you can get a below career offender guideline sentence, if that's what the court is asking. No, but it's the only time it would come up in this kind of situation. In other words, trying to figure out, you know, under what guideline the sentence was imposed under. Well, I think that the court is right in the sense that, as I said before, C agreements are different. So the government has brought up the application note in guideline section 1B1.10, and the definition of applicable guideline range in that application note is the sentence that is imposed, or the sentencing guideline range that applies prior to the imposition of any variances or downward departures. And so we agree that in the non-C plea agreement context, if this was not a C agreement, then we agree that Mr. Pleasant would not be eligible for a sentence reduction because the pre, if you did that calculation first, then he would not be eligible under the application note. But the application note does not control in the context of C agreements. Freeman controls. And the reason we know that is because Justice Sotomayor says that when you're looking at the sentence in C agreement, it does not depend on departures or variances or 3553A. None of that is even considered. All that matters is the sentence that is in the agreement. And so we know the application note can't apply in the context of C agreements because it specifically says that it is the guideline range that applies before departures or variances. In C agreements, there are no departures or variances. There is just the number that the parties agreed upon in the binding contract. And so in this case, even though it does say in the plea agreement that he's a career offender, what matters is the sentence. And in this case, the sentence was not a number. It was specifically tied to the low end of the crack cocaine guidelines, which changed. There's just no getting around that. So your position is that any time an individual reaches an 11C with the government, and the agreed upon sentence relates specifically to the guidelines, and the guidelines change despite the waiver in the agreement, the individual was eligible for an adjustment of sentence? Yes. My position is that in the context of a C agreement, we look only to what is the actual sentence that the parties agreed upon. And Justice Sotomayor makes that very clear. And I disagree with the government that Freeman only addresses the first prong of 3582C. It's clear that she addresses the first prong, which is the based on prong. The government concedes that in this case, the sentence was based on the crack cocaine guidelines. But she addresses the second prong too. In the last paragraph of her concurrence, she states that in this case, it was the sentencing range originally used to establish the term of imprisonment that is the applicable guideline range. The applicable guideline range in context of C agreements is related to what the actual sentence was based on. It is different. The definition from the guidelines in 1B1.10 cannot apply because that incorporates departure to variances. No, but in that case, you see, I mean, right? Isn't this the case, the sentence that was imposed was in the based on range? It is true that in Freeman It is not true here. The defendant was not a career offender in Freeman, if that's what the court is getting at. That's true. In other words, you know, there weren't, in effect, two competing guidelines in Freeman. So they didn't have to address the second prong. Well, I disagree. I agree with the court. And I would say if you think it's addressed, it is clearly dicta, right? No, Your Honor. I don't think so. It is true that the defendant in Freeman was not a career  The defendant, as I said, did not explicitly address the term applicable guideline range. And number two, her rationale and her reasoning and the way she differentiates C agreements from all other types of plea agreements lead to no other conclusion. What she is saying in her entire argument is that C agreements are a binding contract between the parties. And that sentence, we don't look at any other, we don't look at the guidelines. We don't look at 3553A. We just look at the sentence the parties agreed upon. That is what we get, that's how we get to what is the sentence based on. And you're pointing to Judge Sotomayor's concurrence, but looking at the actual opinion in Freeman, and it says the text and the purpose of the three relevant sources, the statute, the rule, and the governing policy statements require the conclusion that the district court has authority to entertain section 3582C2 motions when sentences are imposed in light of the guidelines, even if the defendant enters an 11C1C agreement. That's what the plurality says, yes. So the difference between the plurality and Justice Sotomayor is that she says you're only eligible in an 11C1C agreement if the actual sentence was tied to a sentencing range that's changed. And in this case it was. So the plurality is broader, and certainly that would have been our first argument, but we concede that Justice Sotomayor's concurrence is narrower than the plurality. The dissent would say that nobody who enters into a C agreement gets a reduction. The plurality would say that pretty much anybody who enters into a C agreement, the court can consider. Justice Sotomayor's approach makes sense. It's a compromise. She says no, look, if you enter into a C agreement, that's a binding contract. Judges can't just go and change the terms. They can't change that around. But at the same time, the statute says that if the sentence is based on a sentencing guideline that's changed, a person has a right to have a reduction of sentence. And so if in the contract it provides for a reduction of sentence, the person gets the reduction. And that is exactly what happened here, because the parties bargained for a sentence at the low end of the crack cocaine guidelines, and I don't think it could have been any clearer. In reducing the sentence, the district court was actually enforcing the terms of the agreement. All right, thank you. Thank you very much. Your Honor, Freeman does not stand for what opposing counsel says it does. This is, Freeman is a case that did not have a career offender, as Judge Tashima pointed out. In that case, the guideline range upon which his sentence was based on was lowered. So was the applicable guideline range, because it was all under 2D1.1. This case is different. This case is not something that is addressed by Freeman. Freeman did not address when you have a situation where a career offender, and Pleasant was clearly a career offender, and this is not something that was negotiated around in the 11C1C agreement. It was actually enshrined in the agreement in paragraph 7 that states that his guidelines calculation is pursuant to 4B1.1 career offender, and that there shall be no departures other than what is stipulated in paragraph 8 of the plea agreement. So paragraph 8 says that his sentence will ultimately be based on 2D1.1. So he does meet that criteria, which is that the plea agreement says that his sentence will ultimately be, after a variance, based upon the 2D1.1 guideline range, which is lowered by amendment 750. But that his applicable guideline range, which is calculated under the career offender guideline, 4B1.1, is not impacted. There's this fundamental conflating of these two requirements that opposing counsel has advanced, which the district court seems to have bought into, which is just not true. The district court failed to acknowledge that after Freeman, the sentencing commission expressly resolved the conflict of what to do in a situation such as Malone's case, where you have the applicable guideline range that is different than the post-departure guideline. And it expressly resolved this issue against Malone's situation. In fact, this does not involve even an 11C1C plea agreement. What I mean by that, I'm sorry, your honors, is that it's not dependent on whether there's a rule 11C1C agreement. A defendant could go into court as a career offender and a district court in an open plea, for example, or a post-trial, and the district court would be free, for example, to find that the criminal history category was overrepresented and sentence the defendant to something based on the 2D1.1 range without a plea agreement. That situation, that defendant, too, like Mr. Pleasant, would be ineligible for the very narrow, very limited statutory exception to the rule that sentences are generally final, that is, established under 3582C2. Are you, in effect, asking us to read in the word current to the waiver? Current guidelines? No. No. The guidelines, just generally. The waiver issue is not presented in the Pleasant case. Right. But the waiver is of 3582 because whenever the guidelines make an amendment, I think that perhaps Mr. Malone, in that case, would prefer that reading, but it doesn't say that. That's not an express term at all. I'm just trying to think of what the teaching point is here for the government and the defense. The teaching point is that when you negotiate and get a very favorable plea agreement, and one of the conditions of that is that you're not going to make the government go through motions and use of government resources to litigate motions such as this or appeals such as this, that you should be bound to that when that's the bargain that you've struck. That's the teaching on the waiver issue. The teaching on the jurisdiction issue is that Freeman only represents a holding, the controlling concurrence that Justice Sotomayor wrote only addresses the based on portion, which is only one portion of the requirements of 3582C2 that sentences are otherwise final and that district courts cannot illegally reduce them because they've misunderstood what Freeman stands for. I'd like to just read very briefly what the Third Circuit wrote in Ware, which addressed this identical issue, that the reliance on Freeman is misplaced. That's at 694F3, 527, at pin site 533 and 534. It states that the meaning of the term based on and hence the holding of Freeman is simply not germane to the present appeals where the present appeal had to do with a person who was a career offender even though they were eventually sentenced or their sentence was based on a guideline that was affected by, in that case, Amendment 706. The Ware opinion in the Third Circuit said that it is clear that Freeman was decided prior to the amendment of the guidelines commentary that added the language at issue in these appeals. As we have recognized, Section 3582C2 expressly incorporates the guidelines policies and therefore modification of the relevant policies may affect the proper interpretation of the statute as a whole. It is clear, moreover, that the sentencing commission may modify the guidelines and associated commentary in a manner that abrogates prior judicial decisions much as Congress may amend a statute previously interpreted by the courts. So even if Freeman stood for what the defense wants it to stand for, it would be abrogated by the subsequent amendments 759 and 750 of the sentencing guidelines. We would ask this court to issue an opinion clarifying the issues both on the waiver as well as the jurisdictional issue with regard to 3582C2. The district courts clearly need some guidance clarifying the reach and applicability of Freeman. We would ask the court to reverse, also keeping in mind that Mr. Pleasant, absent of reversal, will be released from custody on January 6th  Thank you very much. Thank you both for your excellent arguments. The case is now submitted and we'll be proceeding on to the next case. The next case is Xiaodong Wang versus Eric Holder and that case has been submitted and also the case of Garcia Lopez versus Alejandro Mayorkas has been submitted so we're ready to proceed with the case of Robert Taylor versus Eric Holder.
judges: Hawkins, Tashima, Murguia